IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

CHRISTOPHER A. ANDERSON,

    Plaintiff,                                      OPINION AND ORDER

    v.                                                14-cv-831-wmc

DR. BUTLER, *et al.*,

    Defendants.

---

In this *pro se* civil rights lawsuit, plaintiff Christopher A. Anderson is proceeding on claims that a doctor and several nurses at the Rock County Jail violated his constitutional and common law rights by refusing to fill prescriptions necessary to treat his mental health conditions. Defendants moved for summary judgment on the ground that all of Anderson's claims must be dismissed for failure to exhaust jail administrative remedies. (Dkt. #33.) Since Anderson claimed that jail staff told him that he was not allowed to file a grievance about his medical care, the court held a *Pavey* hearing at which the Anderson appeared *pro se* and defendants appeared by counsel.[1] Following the hearing the court received additional briefing from the parties. For the reasons that follow, the court will now grant defendants' motion and dismiss this lawsuit.

---

[1] Under *Pavey v. Conley*, 663 F.3d 899 (7th Cir. 2011), an evidentiary hearing may be necessary to determine whether prison officials erroneously informed an inmate that an administrative remedy did not exist or inaccurately described how to pursue that remedy. *Id.* at 906.

UNDISPUTED FACTS

While he was being held at the Rock County Jail between January 11, 2013, and February 5, 2013, Anderson claims that defendants failed to refill his prescriptions for Seroquel and Prazosin, despite informing jail staff that he needed both prescriptions renewed. As a result, he claims he suffered a "massive panic attack" in early February with visual hallucinations and suicidal ideation.

To exhaust administrative remedies at the Rock County Jail, prisoners must follow the inmate complaint review process set forth in the jail rule book. In particular, the Rock County Jail Inmate Grievance Procedure requires inmates to submit a written grievance within 15 days of an alleged violation of their rights by jail staff. (Dkt. #40-1.) If a grievance concerns medical care, it is forwarded to the on-duty, jail nurse for review. (Dkt. #40-2.) The nurse may attempt to resolve the issue, or may refer the grievance to the responsible physician or other authority. If the nurse determines that the grievance is not valid or is minor in nature, the inmate has 5 days to request review by the responsible physician. The responsible physician's decision is final. (*Id.*)

Before filing this suit, Anderson filed *no* grievances regarding defendants' refusal to refill prescription medications, nor for that matter, any other medical treatment he received at the Rock County Jail, although he acknowledged filing other non-medical grievances in January of 2013. When the parties initially briefed defendants' exhaustion defense, Anderson maintained that multiple staff members told him that medical issues could not be the subject of a grievance, but that he could not remember the staff members' names

2

due to the passage of time. Given that Anderson's excuse for failing to follow the grievance procedure as to his medical issues concerned disputed issues of fact and credibility, the court held an evidentiary hearing on August 8, 2017.

During that hearing, Anderson's story changed under oath. Anderson conceded that he could not remember asking about how to submit a medical grievance, nor could he remember whether staff actually told him that the grievance process was not applicable to medical-related issues. Acknowledging that his recollection of events is hazy because of his impaired mental state, Anderson nevertheless insisted that he did ask jail staff about how he could obtain recourse for a medical-related issue, and staff said they could not help him.

In contrast, defendants submitted evidence related to the jail's rules, and Anderson's mental state in January and February of 2013. As to the former, defendants elicited testimony from Brian Aubrey, a Rock County Jail sergeant familiar with the jail's grievance procedures. Aubrey explained that inmates had access to the grievance procedures through a kiosk located in each housing unit. The kiosk contained a video monitor with a touch screen that inmates could use to call up the jail's grievance process. At least from the inmate perspective, Aubrey testified that the grievance process was the same for any type of grievance, including medical grievances, but a verbal complaint to medical staff did not constitute a proper grievance. The only difference Aubrey could identify was that an officer responding to a medical grievance would need to work with medical staff to resolve the grievance. From the perspective of the inmates, however, Aubrey testified that the

3

grievance process would look the same regardless of the subject matter.

After the hearing, defendants also provided excerpts from the jail's records detailing Anderson's treatment during the relevant time period. Those records indicate Anderson was seen frequently by correctional officers and nurses during medication distribution in January and early February 2013. Rocky County crisis intervention workers saw Anderson during the same period as well. Once on January 16 and a second time on January 31, Anderson further submitted a written request to be seen by a mental health counselor. The records memorializing those visits indicate that Anderson's care providers deemed him cognizant and capable of communicating, both verbally and in writing.

Specifically, on January 16, 2013, Mike Guiselman, a crisis worker, wrote that Anderson was "[d]oing OK except nightmares are starting to return." (Rock Cty Jail Record (dkt. #57-1) at RCJ 234.) On January 17, 2013, Dr. Butler reviewed Anderson's sleep logs and noted that it appeared he was getting adequate sleep. On Friday, February 1, 2013, a Rock County crisis intervention provider, Carrie Rudolph, received a phone call that Anderson was placed on suicide watch after telling staff that he was anxious, having hallucinations and feeling suicidal. (Rock County Jail Record (dkt. #57-1) at RCJ 122.) Rudolph also noted that she first met with staff that Friday, who reported that they had been decreasing or stopping Anderson's medications, but he was taking hydroxyzine and dicyclomine for withdrawal from Prozac, Wellbutrin and Neurontin. Rudolph further noted that staff told her that Anderson reported that he was feeling like cutting or hanging himself.

4

The records show Rudolph then met with Anderson. After she reported that Anderson was initially laying down and readily came to the door; he reported feeling "so-so" and having suicidal thoughts, but did not act on them; he denied feeling upset; he admitted "seeing things" earlier, beginning with a "mist, then a face then a shadow spirit"; he had not slept well the night before; and he had not received his Seroquel since he ran out. Rudolph told him that she would look into it. In her contemporary assessment that day, Rudolph further wrote that Anderson was "calm and cooperative," but reported feeling "anxious and was hallucinating." She also wrote that Anderson presented in an unremarkable mood, appeared alert, had intact memory, adequate judgment and was "able to read, able to write, [and able to] understand directions." (*Id.* at RCJ 123.) In light of how he presented that day, Rudolph recommended that Anderson remain on watch, but would require re-assessment the next day. (*Id.*)

The next day, February 2, a Saturday, progress notes included the following: "Christopher reported he remains suicidal and unable to guarantee his safety. Doesn't think he will be safe until after he sees the doctor on Monday. Denied seeing visual hallucination last night[] [b]ut reports thoughts of cutting and hanging last night. To remain on watch." (*Id.* at RCJ 199.) The Tuesday, February 5, 2013, progress notes includes a statement attributed to Anderson that: "he needs to be on Rx of Seroquel. He reports as long as he is [without] Seroquel he will remain suicidal. He states he wants to cut himself… Cooperative to speak with… Appears to be somewhat lower functioning. Dr. Butler [is not] in on Monday, will be seen today." (*Id.*). Anderson does not dispute the

5

accuracy of that statement.

Even more telling, defendants submitted evidence that Anderson filed *three* different grievances during this same time frame, each related to an incident in which an officer refused to give him a lunch tray. On January 17, 2013, Anderson submitted a grievance complaining that Officer Gerber refused to give him a meal tray because he was reading and missed it during hand out. In response to that grievance, Anderson was told that he should have gotten up on time to receive his tray, prompting him to file a second grievance. This time, Anderson complained not only that he missed the tray hand out, but was refused his tray despite asking politely. Then, on January 21, 2013, Anderson filed a third grievance in which he complained that Gerber was disrespectful to him.

OPINION

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the [jail's] administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose of these requirements is to give the jail administrators a fair opportunity to resolve the

6

grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).

If a prisoner fails to exhaust his administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Inmates are not only informed that the Rock County Jail has grievance procedures, but as described above, inmates may review the grievance procedures through the jail's "kiosk system," which is available in every housing unit. The kiosk system and grievance procedures were available for review during the time in which Anderson was held at the jail, but at least in January, he had taken advantage of that system repeatedly to grieve his lunch tray dispute.

Still, prisoners are required to comply only with those grievance procedures that are "available," 42 U.S.C. § 1997e(a), and an "administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey*, 663 F.3d at 906; *see also Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (grievance process "unavailable" if "prison administrators thwart inmates from taking advantage of a grievance process through machination, *misrepresentation*, or intimidation") (emphasis added). At the *Pavey* hearing, Anderson ultimately testified that staff told him they could not help him with medical-related issues, which is not the same as telling him that no

7

administrative remedy exists or misrepresenting facts to thwart his pursuing a remedy, especially when a medical grievance is in fact referred to medical staff for disposition.

During the *Pavey* hearing, the court raised the applicability of the Court of Appeals for the Seventh Circuit's then recent exhaustion decision in *Weiss v. Barribeau*, 853 F.3d 873 (7th Cir. 2017). In that case, the court concluded that a grievance process is unavailable in circumstances where "the prisoner can't obtain or complete the forms required to invoke them." *Id.* at 875. Specifically, in the *Weiss* scenario, the prisoner plaintiff alleged that he had been involuntarily transferred from the prison to a mental health treatment center, where he was forced to take psychotropic medication that caused him to engage in bizarre behaviors and make bad decisions. *Id.* at 874.

Before being transferred, Weiss had tried to file a grievance regarding an alleged assault by his cellmate that resulted in a broken ankle and was left untreated for several months. That first grievance was returned with instructions to resolve his grievance informally, and failing that to resubmit his grievance within 14 days, which he was unable to do before his transfer. After his transfer, Weiss submitted a second grievance from the mental health center, which was rejected as untimely. The notification of rejection informed Weiss that he had ten days to appeal. Unfortunately, that notification was apparently directed to Weiss at the prison, rather than to the mental health center where Weiss was located, meaning that the defendants could not establish that Weiss actually received the rejection. Moreover, during the ten-day appeal period, Weiss was both heavily medicated *and* lacked access to grievance forms. *Id.* at 875.

Based on all of these circumstances, the Seventh Circuit concluded that administrative remedies were not available to Weiss. Specifically, the court found that although he tried to follow the policies, Weiss could not "obtain or complete the forms required to invoke them," and defendants "failed to explain how he could have pursued his remedies while suffering a mental breakdown requiring hospitalization." *Id.*

Acknowledging some similarities in the facts in *Weiss*, defendants argue that the grievance process was not similarly unavailable to Anderson. Certainly, Anderson appeared to have suffered from a chronic mental health condition in January and early February of 2013, apparently exacerbated by a refusal to continue a prescription. Still, by all accounts, his circumstances were markedly less severe than Weiss's. For one, Anderson was not placed on psychotropic medications or heavily medicated in January of 2013. That is not to say that Anderson was not dealing with severe issues. To the contrary, the record suggest that Anderson was suffering from withdrawal, threatening self-harm, and for a period of time in early February suffering from hallucinations. However, Anderson's mental and physical health problems did not prevent his filing other grievances. Nor does Anderson claim that he lacked the ability to communicate with staff. Indeed, the staff and crisis intervention worker who visited Anderson noted that he was coherent and able to communicate his needs, both orally and in writing, something confirmed by Anderson's written requests to be seen on January 16 and 31. Importantly, the evidence of record indicates that unlike Weiss, Anderson not only had access to, but also actively took advantage of, the grievance process, having filed three grievances in January of 2013. His

persistence in resolving that issue demonstrates both that his mental health challenges did not create a barrier to him pursuing a grievance related to the defendants' decision to stop his medications and that the grievance process was readily available to him at the jail in January and February of 2013. Accordingly, defendants have met their burden of showing that Anderson's mental state, alone, did not render administrative remedies unavailable to him.

There is also insufficient evidence that the Rock County Jail staff misled Anderson about the availability of these administrative remedies. In support, defendants cite a decision from this court. In *Jones v. Nelson*, No. 15-cv-831-bbc, 2017 WL 3142108 (W.D. Wis. July 24, 2017), the court rejected plaintiff's argument that his mental and physical health problems warranted an exception to the exhaustion requirement. In that case, the prisoner had submitted a grievance against mental health services, but the grievance was rejected as untimely. In responding to defendants' failure to exhaust argument, the prisoner argued both that he had mental health problems and needed the help of other inmates to file grievances, *and* that a prison official told him "not to worry" about the delay in filing a grievance. As to the latter, the court found the "vague claim that unknown prison officials misled plaintiff about his deadline for filing a grievance" fell short of establishing that anyone interfered with his ability to file a grievance. *Id*. at *4. Furthermore, the court was unpersuaded that his mental health problems made the grievance system unavailable because the undisputed record established that the plaintiff had filed numerous other grievances during the relevant time period. *Id.* at *5.

Even assuming that Jones's mental health challenges were less severe, Anderson's engagement in the grievance process similarly indicates that his mental health problems did not stand in the way of his crafting and filing grievances related to the conditions of his confinement. Moreover, like Jones, Anderson has submitted no evidence that anyone at the jail took action to interfere with his ability to prepare a grievance related to his medications. In both circumstances, staff's comments at most may have created confusion, but Anderson in particular acknowledges that he may not have even asked staff about the grievance process.

Accordingly, without discounting the real problem of an institution discontinuing or substantially changing prescribed medications for mental illness for those already thrust into the difficult circumstances of involuntary confinement, the evidence of record establishes that Anderson's mental health issues were not so severe that they precluded him from submitting a grievance about his medications in January and February of 2013. Furthermore, Anderson has not submitted *any* evidence that any Rock County Jail staff told him that he could not use the grievance process to complain about medical treatment. Since Anderson concedes that he did not follow the grievance procedures as required, therefore, the court must dismiss this lawsuit without prejudice.[2] *See Fluker v. County of*

---

[2] Since Anderson is no longer incarcerated, he may choose to file a new lawsuit against defendants without having to exhaust his administrative remedies. *See Miniz v. Pazera*, 2007 WL 4233455, *4 (N.D. Ind. 2007) ("Even if a prisoner has a case dismissed for failure to exhaust available administrative remedies, they can refile the exact same complaint once they are released from prison without having to satisfy the exhaustion requirement."). Anderson will, however, still be responsible for paying the filing fee or be subject to screening if he requests to proceed *in forma pauperis*.

*Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) (dismissals for failure to exhaust are always without prejudice, "even if exhausting administrative remedies will prove to be impossible") (citing *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)).

ORDER

IT IS ORDERED THAT:

1. Defendants' motion for summary judgment for failure to exhaust administrative remedies is GRANTED.

2. This case is DISMISSED without prejudice.

3. The clerk of court is DIRECTED to enter judgment in defendants' favor and close this matter.

Dated this 15th day of January, 2019.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge